# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RENEE MASON, DPM,** *individually and derivatively on behalf of Abingdon Foot and Ankle Clinic, PC,* | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:22CV00008 |
| v. | ) ) | **OPINION AND ORDER** |
| **BRIAN MAZZEI, ET AL.,** | ) ) | JUDGE JAMES P. JONES |
| Defendants. | ) ) | |

*Kellie Budd,* VASSEGHI BUDD *PLLC, Fairfax, Virginia, for Plaintiff; Dennis E. Jones,* DENNIS E. JONES, *PLC, Abingdon, Virginia., for Defendants.*

In this action invoking the court's diversity jurisdiction, the plaintiff, Renee Mason, the estranged wife of defendant Brian Mazzei, asserts that Mazzei has breached his fiduciary duties and converted property belonging to the professional corporation of which the parties are shareholders, directors, and officers and has tortiously interfered with Mason's business expectancy. The parties have filed partial cross motions for summary judgment. For the reasons that follow, I will deny both motions.

I.

The following facts are taken from the summary judgment record, which largely consists of discovery deposition transcripts and exhibits thereto.

In July 1995, Abingdon Foot and Ankle Clinic (Clinic) was incorporated as a professional corporation under Virginia law.[1] The Clinic's Articles of Incorporation named Mazzei and Mason as initial directors.

The First Meeting of the Board of Directors (First Directors' Meeting) was held on December 27, 1995. At that meeting, Mazzei and Mason elected themselves as officers, Secretary/Treasurer and President, respectively. The meeting minutes indicate that Mason "*had received* 127 shares of stock in the corporation" and that Mazzei "*had received* 123 shares of stock in the corporation." Defs.' Mem. Supp. Mot., Mazzei Decl. Ex. D at 4, ECF No. 35-7 (emphasis added). The directors instructed the officers (themselves) to execute and issue stock certificates for these shares of stock.

The directors adopted the Clinic Bylaws at this First Directors' Meeting. The Bylaws provide that the Clinic's stock "shall be issued in numerical order," "shall be signed by the President . . . and attested by the Secretary" and "[a] record of each certificate shall be kept on the stub thereof." *Id*. at Mazzei Dep. Ex. 3 at 1, ECF No. 35-2.

The parties also held the Annual Meeting of the Board of Directors and Shareholders on December 27, 1995. Mazzei Decl. Ex. D at 6, ECF No. 35-7. This

---

[1] Prior to incorporation, Mazzei established the Clinic as a sole proprietorship while Mason finished her out-of-state podiatry residency program.

- 2 -

meeting was somewhat duplicative of the First Directors' Meeting; the Annual Meeting minutes indicate that the "shareholders" elected themselves as directors for the Clinic, who in turn elected themselves as President and Secretary/Treasurer. *Id.* Mazzei and Mason signed the Annual Meeting minutes as both shareholders and directors.

On May 15, 1996, despite having stated in the meeting minutes from half a year earlier that the parties had already received their shares of stock, Mason and Mazzei submitted letters to the Board of Directors stating that they "agree[d] and *fully intend[ed]* to purchase" 127 shares and 123 shares of stock for certain sums, respectively. *Id.* at Ex. E, ECF No. 35-8 (emphasis added); *Id.* at Ex. F, ECF No. 35-9 (emphasis added).

The record is unclear whether stock certificates were ever issued and whether the parties paid for their shares. The Clinic's Share Register is blank. The only stock certificate book in the record is full of blank certificates beginning at the certificate marked number 0. Mazzei testified that no money was ever paid for the stock. Mason testified that she believed the parties had paid for the stock, and she remembers that money coming from funds borrowed from Mazzei's grandmother. The Clinic's former accountant testified that there was $25,000 categorized as Capital Stock on tax returns, which she stated is typically indicative of an initial shareholder investment. Attorney John Lamie, the Clinic's incorporator, testified

that the parties held themselves out as shareholders. It is undisputed that Mason and Mazzei were treated as shareholders for tax purposes.[2]

As is the case with many close corporations, Mason and Mazzei usually ignored corporate formalities. Mazzei testified that there were no regular corporate meetings after December 2000. Mason testified that there were meetings, but that they were sometimes held over dinner, in the car, at the kitchen table, or during breaks at seminars. Despite Mason's role as president, Mazzei managed the Clinic while Mason focused on the home. Bank records and deposition testimony indicate Mazzei regularly used the Clinic's accounts to pay personal expenses for both himself and Mason, payments of which were treated as shareholder advances on tax documents. Upon incorporation, the Clinic executed an equipment lease with Mazzei, but Mazzei does not recall any rental payments. It was common practice for the Clinic to issue distributions jointly to the couple as opposed to individually.

In recent years, Mason's role and the parties' relationship changed. In March 2020, Mason temporarily stopped working because of the COVID-19 pandemic. Then in 2021, the couple's relationship deteriorated. Mason left for Maryland in July of 2021 after she claims there was an altercation between her and Mazzei.

---

[2] The Clinic elected pass-through S-Corp status, and the parties were issued Schedule K-1s and VK-1s.

Mazzei disputes this claim and contends that Mason simply walked into the office, threw everything that was on her desk at Mazzei, and quit.

Mason returned in August 2021 to "test[] the waters." Pl.'s Mem. Supp. Mot. Ex. 6, Mason Dep. 7, ECF No. 37-6. At this point, the couple began discussing the possibility of Mason managing the Clinic after Mazzei asked for a second consolidation loan and Mason "saw that things were being mismanaged." *Id.* at 39. Mazzei allegedly agreed at first. But at some point thereafter, Mazzei reputedly became combative, and Mason departed again for Maryland. Mazzei changed his mind about Mason managing the Clinic after this.

Mason told Mazzei that she was considering selling her shares to an investor, but Mazzei did not consent to this. Mazzei then hired a divorce attorney, who told Mazzei to change the locks on the office because Mason had "walked away." Mazzei Dep. 64, ECF No. 35-1. The Clinic stopped paying Mason a distribution and Mazzei removed Mason from the clinic's payroll. Mazzei also removed Mason's access to patient charts.

After Mason quit working, the Clinic's cash flow dropped, and Mazzei had to take money out of his personal accounts to cover the Clinic's bills. In tax year 2021, the Clinic incurred thousands of dollars in overdraft fees. Mazzei alleges that Mason overdrafted a personal account that he then "got stuck with." *Id.* at 70. In August 2022, Mazzei failed to file the Clinic's required annual report with Virginia

Corporation Commission. Mazzei began paying employee raises out of a personal banking account. Mazzei's spousal support payments to Mason are being paid out of Clinic funds. Mason and Mazzei are currently in the middle of contested divorce proceedings in state court.

Mason initially filed this suit naming the Clinic and Mazzei as defendants and asserting that Mazzei has breached his fiduciary duties to her, wrongfully converted the Clinic's assets, and tortiously interfered with Mason's business relationships in the Clinic. Mason then timely amended the Complaint to bring her breach of fiduciary duty and conversion claims derivatively on behalf of the Clinic.

The parties have filed cross motions for summary judgment. Mazzei contends that Mason does not have standing to sue derivatively because she is not in fact a shareholder, and accordingly seeks judgment on Mason's derivative claims. Mason asserts that she is entitled to summary judgment because Mazzei does not dispute the facts underlying her claims and that the record demonstrates that she is a shareholder. The parties agree that Mason's tortious interference with a business expectancy claim is an individual claim that should proceed to trial. At oral argument, Mason moved to voluntarily dismiss Count Four of her Amended Complaint, which sought a court order allowing her to inspect and copy the corporate records. Mason represents that such records have now been produced.

The motions have been fully briefed, argued, and are ripe for decision.

II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The court should not weigh evidence. G*reater Balt. Ctr. for Pregnancy Concerns, Inc. v. Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013). In the context of cross motions for summary judgment, "[w]hen considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).[3]

---

[3] I have omitted internal quotation marks, citations, and alterations throughout this opinion, unless otherwise noted.

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable factfinder to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

### III.

Before turning to the parties' motions, I must first determine whether this court has subject-matter jurisdiction over Counts One and Two, the derivative claims. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). The Amended Complaint does not raise a federal question, leaving diversity of the parties' citizenship as the only potential foundation for jurisdiction. It is undisputed that Mason is and was at the time of filing a citizen of Maryland, while the Clinic and Mazzei are citizens of Virginia. At issue is whether the Clinic should be aligned as a plaintiff, which would destroy diversity, or remain as a defendant, which would allow jurisdiction.

In a derivative action, the corporation is an "indispensable" party. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 n.2 (1947). This is because the corporation is typically considered the "real party in interest." *Id.* at 522–23. Thus, an individual suing derivatively is typically considered a nominal plaintiff,

and the corporation is aligned as a plaintiff. *Gibson v. BoPar Dock Co.*, 780 F. Supp. 371, 373 (W.D. Va. 1991). If this principle applies here, there is no diversity — both the Clinic and Mazzei are Virginia citizens.

But certain derivative actions are excepted from realignment when the corporation is "in antagonistic hands," *Koster*, 330 U.S. at 523, which occurs when the corporation's management is aligned against the plaintiff. *Smith v. Sperling*, 354 U.S. 91, 95 (1957). Typically, when a plaintiff has the power to take control of the corporation, such as when the plaintiff is a majority shareholder, the corporation is not considered to be antagonistic. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1237–38 (9th Cir. 2008). Courts have also considered whether the plaintiff has made a demand on management to sue, *Tessari v. Herald*, 207 F. Supp. 432, 437 (N.D. Ind. 1962), and whether the corporation and the other defendants share counsel. *Raese v. Kelly*, 59 F.R.D. 612, 615 (N.D. W. Va. 1973).

Mason asserts that she is the majority shareholder, owning 50.2% of the Clinic. There is no dispute that she is co-director and is President and that she did not attempt to call a meeting of the shareholders or board of directors to address her concerns. These considerations all weigh toward the alignment of the Clinic as a plaintiff. *Gibson*, 780 F. Supp. at 373–74.

But despite the appearance of control on paper, the record reveals that in practice, Mason has had no role in the Clinic's management. Mazzei primarily

managed the clinic prior to Mason's move to Maryland while Mason focused on the home. And after the move, it is undisputed that Mazzei took even more control by removing Mason's access to the Clinic and its records. Thus, this is not a case where Mazzei is managing by default and where, at the time of filing, nothing prevented Mason from taking over the corporation. *Id*. at 374. Nor is it the case where the corporation cannot act in its interest simply because the directors are deadlocked. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1237. Rather, Mazzei "appears to have complete managerial control" in connection to "the primary issue in controversy," being the treatment of corporate assets. *Hildebrand v. Lewis*, 281 F. Supp. 2d 837, 846 (E.D. Va. 2003). Moreover, defense counsel represents both the Clinic and Mazzei.

Based on the record before me and recognizing that this is a close case, I find that the Clinic is antagonistic to Mason's suit, is properly aligned as a defendant, and that diversity jurisdiction exists.

IV.

A.

I turn now to the parties' motions. Mazzei's motion hinges on a single point — Mason is not a shareholder and therefore does not have standing to sue.[4]

---

[4] Mazzei contends that neither party is a shareholder, but Mason's shareholder status is the only status that matters at this juncture.

The Code of Virginia defines a shareholder, in relevant part, as "the person in whose name shares are registered in the records of the corporation." Va. Code Ann. § 13.1-603.[5]  In determining shareholder status, courts "look[] to (1) the reflection of the shareholder's name in the company books, (2) a stock certificate proving ownership of shares, (3) payment for the shares of stock, and (4) the company payments of dividends upon the stock to the shareholder." *Rountree Motors, Inc. v. Commonwealth Dealers Life Ins. Co.*, No. 3:13CV47 (DJN), 2013 WL 4102161, at *4 (E.D. Va. Aug. 13, 2013) (analyzing shareholder status under Virginia law and citing *Turnbull v. Payson*, 95 U.S. 418, 420–21 (1877)).  "[P]ossession of stock certificates and registration of the certificates in the records of a corporation are prima facie evidence of shareholder status" but "possession of certificates and recordation of them . . . is not dispositive." *Barber v. VistaRMS, Inc.*, 634 S.E.2d 706, 711–12 (Va. 2006).

I begin by analyzing the corporate documents in the record.  The First Directors' Meeting minutes indicate that the parties had received stock.  Mason and Mazzei signed the December 1995 Annual Meeting minutes in their capacities as shareholders.  Mason and Mazzei were treated as shareholders on Clinic-related tax forms.  The Bylaws require that the Clinic's directors be stockholders.  Viewed in

---

[5] Virginia law governs this case.  *Smith*, 354 U.S. at 95.

a light most favorable to Mason, this evidence does not permit a finding that Mason is not a shareholder.

But there is some conflicting evidence in the record. Mason and Mazzei's May 1996 letters to the Board of Directors state that at that time they only <u>intended</u> to purchase shares of stock, which conflicts with the First Directors' Meeting minutes representing that Mason and Mazzei were already stockholders. The Clinic's stock ledger does not list either party as owner. It appears that no stock certificates have been issued from the only stock certificate book in the record. This conflicting evidence creates a genuine dispute of material fact as to whether the Clinic's books identify Mason as a shareholder.

As to whether Mason paid for the stock, material facts are also in dispute. Mazzei maintains that no money was ever paid for the stock. Mason testified that she recalled that money was paid for stock out of funds borrowed from Mazzei's grandmother, although there is also some evidence that this loan consisted of money that may have been used as start-up funds prior to incorporation, not as consideration for the parties' shares. And again, the parties' May 1996 letters indicate only that the parties intended to pay for their stock. An accountant did testify that money classified as Capital Stock on the Clinic's tax returns may be indicative of an initial shareholder investment, but the accountant conceded that she was not involved in the Clinic's incorporation, and regardless, it is unclear that this money was the

consideration Mason and Mazzei "intended" to pay for shares of stock pursuant to their May 1996 letters.

Finally, it is undisputed that the Clinic paid Mason and Mazzei dividends in a joint fashion until divorce proceedings began. This evidence can be conclusive of ownership if such payment was made "upon the shares standing upon the book of the company . . . when taken in connection with the other evidence." *Turnbull*, 95 U.S. at 422. Here, other evidence of ownership is conflicting and therefore this fact is not conclusive. But a jury could certainly find that the payment of dividends is an indication of shareholder status.[6]

In sum, I find that genuine disputes of material fact exist that are determinative of Mason's shareholder status. Consequently, Mazzei's motion will be denied. I turn next to Mason's motion.

### B.

Mason brings her fiduciary duty and conversion claims derivatively, so shareholder status is a prerequisite. Va. Code. Ann. § 13.1-672.1 (noting that only shareholders may bring derivative suits under Virginia law). Thus, for the reasons

---

[6] Mazzei relies upon *Hill v. Hill*, 318 S.E.2d 292 (Va. 1984), but that decision held that a certificate of incorporation conclusively establishes the existence of the corporation, but not its ownership, which could be determined by the particular facts of the case, even where no valid issue of stock had been made. *Id.* at 297. In so holding, it supports the denial of Mazzei's motion.

explained above, summary judgment is inappropriate because there is conflicting evidence in the record about whether Mason and Mazzei were in fact shareholders.

But aside from the disputed facts regarding shareholder status, I deny Mason's motion for other reasons. To establish breach of a fiduciary duty, a plaintiff must prove the existence of a duty, the breach of that duty, and subsequent damages. *DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 586 (E.D. Va. 2014). There is no question that Mazzei owes a duty to any existing shareholders and to the Clinic itself as a director and officer of the corporation. Under Virginia law, directors and shareholders owe a duty of loyalty to the corporation and to the corporation's shareholders. *WLR Foods, Inc. v. Tyson Foods, Inc.*, 869 F. Supp. 419, 421 (W.D. Va. 1994), *aff'd*, 65 F.3d 1172 (4th Cir. 1995). But the breach of such duty is often a matter for the jury to determine. *Williams v. Dominion Tech. Partners, L.L.C.*, 576 S.E.2d 752, 758 (Va. 2003) ("Whether such a [fiduciary] duty exists is a question of law to be determined by the trial court. If the evidence is sufficient to establish a duty as a matter of law, only then will it become a matter for the jury to determine whether the duty has been breached.").

Moreover, there is some evidence in the record that suggests Mason may have acquiesced to and benefited from at least some of the conduct of which she now complains. The record suggests that the use of Clinic funds for personal expenses was common throughout the Clinic's existence. There is testimony that the debt

paid from corporate funds was joint debt, that Mason's car was paid using company funds, and that certain gifts paid from company funds were for Mason. Such payments were considered shareholder advances on taxes, and Mazzei testified that Mason never complained of the handling of corporate funds in that way.

As for Mazzei's concession that he locked Mason out of the Clinic, Mazzei testified that at one point Mason said it "sound[ed] like a good idea" to take Mason off the patient record system to save money. Mazzei Dep. 152, ECF No. 35-1. And Mason allegedly told Mazzei to tell patients she had retired and that "her plan was to retire" *id*. at 153, which could lead a jury to conclude that Mazzei's changing of the locks after Mason allegedly quit does not amount to a breach. Additionally, these facts describe an individual injury rather than conduct that injured the shareholders as a class or the corporation.

Mason's conversion claim suffers a similar fate. "A person is liable for conversion for the wrongful exercise or assumption of authority over another's goods, depriving the owner of their possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights." *Simmons v. Miller*, 544 S.E.2d 666, 679 (Va. 2001). Again, the evidence, viewed in a light most favorable to Mazzei as non-movant, suggests that Mason may have consented to the use of Clinic property to pay some of the personal debt for which she now bases her tort claim. Thus, I find that summary judgment is inappropriate,

*see Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 265 (4th Cir. 2016) (unpublished) ("Indeed, Virginia has long recognized that implied consent is a bar to conversion claims."), and I will deny Mason's motion as to her derivative claims.

I will also deny Mason's motion as to her constructive trust and accounting counts. Mason concedes that these are remedies she seeks based on her substantive derivative claims. Thus, I find that these are not subject to determination at this stage of the litigation.

V.

For the foregoing reasons, it is **ORDERED** as follows:

(1) The parties' Motions for Summary Judgment, ECF Nos. 34 and 36, are DENIED; and

(2) Count Four of the Amended Complaint, ECF No. 11, is DISMISSED.

ENTER: January 18, 2023

/s/ JAMES P. JONES
Senior United States District Judge