# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RENEE MASON, DPM,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22CV00008 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **BRIAN MAZZEI, ET AL.,** | ) | Judge James P. Jones |
| | ) | |
| Defendants. | ) | |

*Kellie Budd and Alexander Castelli, Vasseghi Budd PLLC, Fairfax, Virginia, for Plaintiff; Dennis E. Jones, Dennis E. Jones, PLC, Abingdon, Virginia., for Defendants.*

The plaintiff, Renee Mason, a Doctor of Podiatry, has sued her estranged husband Brian Mazzei, also a podiatrist and her former practice colleague, along with their professional corporation, Abingdon Foot and Ankle Clinic, PC (hereafter referred to as the Corporation). She asserts derivative claims on behalf of the Corporation, as well as an individual claim, all related to Mazzei's financial management. In addition to monetary damages, Mason seeks relief in the form of an accounting and a constructive trust. Based on the evidence presented at a bench trial, I will enter judgment partially in favor of the plaintiff and partially in favor of the defendants.

I. PROCEDURAL BACKGROUND.

This action was filed pursuant to this court's diversity jurisdiction, 28 U.S.C. § 1332, asserting claims under Virginia law.  Mason originally sued in her personal capacity for breach of fiduciary duty (Count One), conversion (Count Two), and tortious interference with a business expectancy (Count Four).  She also asserted three counts seeking remedies — a constructive trust over the accounts and property of the Corporation and funds that Mazzei had transferred to his personal accounts (Count Three); an order directing Mazzei to allow Mason to inspect the corporate records (Count Five); and an accounting of the corporate financial records showing Mazzei's actions since July of 2021 (Count Six).

Mazzei and the Corporation moved to dismiss the Complaint on the ground that Virginia law requires that breach of fiduciary duty claims against corporate officers and directors be brought derivatively.  Mason then amended her Complaint to indicate that it was "a derivative action brought against the Practice, its shareholder, and Officer Dr. Mazzei," Am. Compl. ¶ 1, ECF No. 11, and I entered an order finding the defendants' Motion to Dismiss to be moot.  However, the caption of the Amended Complaint continued to indicate that the suit was brought both individually and derivatively, and it remained unclear as to which claims were brought in which capacity.

The parties subsequently engaged in discovery, and several discovery-related motions were filed and resolved.  The parties then filed partial cross-motions for summary judgment.  At the hearing on the cross motions, Mason clarified that the breach of fiduciary claim (Count One) and conversion claim (Count Two) are derivative, while the tortious interference with a business expectancy claim (Count Four) is an individual claim.  She also moved to voluntarily dismiss Count Five because the defendants had produced the business records she sought.  I dismissed Count Five, but otherwise denied the cross motions, finding genuine disputes as to material facts.  *Mason v. Mazzei*, No. 1:22CV00008, 2023 WL 234777 (W.D. Va. Jan. 18, 2023).

The parties waived a jury trial, and a two-day bench trial was held at which the parties presented testimony and exhibits.  This Opinion represents the court's decision in the matter.

## II.  FINDINGS OF FACT.

In accord with Federal Rule of Civil Procedure 52(a) and based on my opportunity to assess the credibility of the witnesses, the following are my findings of fact.  In determining the facts, I have taken into account the rationality and internal consistency of the testimony, the extent of detail and coherent nature of the testimony, the manner of testifying by the witnesses, and the degree to which the subject testimony is consistent or inconsistent with other evidence in this case.

1. Mason and Mazzei are Doctors of Podiatric Medicine who married in 1993.

2. In November 1994, Mazzei established a sole proprietorship called Abingdon Foot and Ankle Clinic in Abingdon, Virginia, as a podiatry medical practice.  At the time, Mason was completing an out-of-state residency program and had not yet begun her practice in Abingdon.

3. The practice was initially funded by a $50,000 loan from Mazzei's grandmother, money that was used to purchase equipment, pay for advertising, and otherwise finance the start-up costs of the practice. Mason contributed a small amount of her residency stipend, approximately $2,000, to pay for certain office furnishings.

4. Following the advice of an accountant, on July 21, 1995, the practice was incorporated under Virginia law as a professional corporation.

5. On that same date, the Corporation executed a lease agreement with Mazzei for the equipment Mazzei had purchased for the sole proprietorship.

6. Shortly thereafter, Mason began practicing with her husband.

7. Mason and Mazzei became the Corporation's sole officers and directors at the Corporation's initial organizational meeting in December 1995, titles they still hold.

8.  At the initial meeting, the directors passed a resolution directing the officers to issue certificates showing that Mason and Mazzei had received certain shares of stock in the Corporation.   No certificates were ever issued.

9.  Mason and Mazzei submitted Letters of Intent to the Corporation's Board of Directors on the day of the initial organizational meeting, indicating that Mason intended to purchase 251 shares of stock and that Mazzei intended to purchase 249 shares of stock for certain amounts of money.[1]

10.  The parties never paid into the corporation the purchase money described in the Letters of Intent.

11.  In May 1996, Mason and Mazzei submitted additional stock subscription letters to the Board of Directors stating that they agreed and intended to purchase 127 shares of stock and 123 shares of stock, respectively, at $100.00 per share.   This money was never paid, nor did the Board of Directors approve the stock subscriptions.

---

[1]  There is conflicting evidence about the number of shares to be assigned to each party.   One copy of the First Directors' Meeting minutes states that Mason had received 127 shares of stock and Mazzei 123 shares.   Defs.' Ex. 103 at 4, ECF No. 57-11.   Another copy of the minutes from the meeting states that Mason had received 255 shares of stock and Mazzei 245 shares.   Defs.' Ex. 127 at 5, ECF No. 59-3.   Nonetheless, I do not find that the specific number of shares received to be relevant to this dispute.   The parties clearly intended to make Mason the majority shareholder.

12. The Corporation, Mason, and Mazzei have consistently conducted themselves as if Mason and Mazzei are the Corporation's sole shareholders, with Mason having 50.2% ownership and Mazzei 49.8%.

13. The Corporation's medical practice is housed in an office building owned by Footsteps, LLC, a separate entity owned jointly by Mason and Mazzei.

14. Mason practiced full-time for the Corporation until Mason and Mazzei adopted their children in 2005 and 2013. She then worked three days a week until 2020, when she stepped aside for approximately six months during the COVID-19 pandemic. She returned to her three-day-a-week schedule around September 2020 and retained that schedule until July 2021.

15. Since the arrival of Mason and Mazzei's children, Mazzei has been the primary manager of the Corporation's practice, which includes overseeing the Corporation's finances and serving as the primary contact with the Corporation's accountant.

16. Mason and Mazzei have not followed corporate formalities with regard to the Corporation. For example, the separation between personal and business charges have not been maintained. Corporate credit cards and accounts have been used to pay personal expenses.

17. The Corporation has elected pass-through Subchapter S status for tax purposes, meaning that Mason and Mazzei personally owe taxes on the Corporation's taxable business income as allocated by their ownership interest and as reported on Mason and Mazzei's Schedule K-1 tax forms, regardless of how much of that income is distributed to them.

18. It was standard practice for the Corporation's accountant to reconcile Mason and Mazzei's joint personal expenses that were paid from Corporation funds by categorizing the personal expenses as either loans to shareholders or shareholder advances on accounting documents. Mazzei assisted the accountant in determining whether the expenses were corporate or personal.  Mason did not question Mazzei's management of the Corporation's finances until August of 2021.

19. Through September of 2021, the Corporation regularly paid shareholder distributions by checks with memos of "K-1."  These checks were written as needed and not because of any formal vote by the directors.  The checks were deposited in a joint personal bank account.

20. Mason and Mazzei also received relatively modest salaries from the Corporation.

21. Mason's and Mazzei's vehicles were paid for by the Corporation and considered part of their compensation for tax and accounting purposes.

22. The Corporation has had multiple bank accounts.  One account is a deposit account, used for collecting payments from patients and insurance companies, and another is an operating account, used for paying payroll and bills.  It has been standard practice for Mazzei to move money among these various accounts.  For example, he commonly wrote checks to cash from the Corporation's deposit account and deposited those checks in the operating account.

23. In July of 2021, Mason and Mazzei's relationship deteriorated.  Mason stepped away from the Corporation's practice after a confrontation with Mazzei.  She lived in Maryland with family for approximately three weeks.

24. In August of 2021, Mason briefly returned.  At this time, Mason asked Mazzei if she could manage the Corporation's finances after learning that Mazzei wanted to seek a debt consolidation loan.  Mazzei initially agreed, but then changed his mind.

25. Mason left again for Maryland.  She has not seen the practice's patients since July of 2021.

26. At some point thereafter and without Mason's consent, Mazzei discontinued Mason's electronic access to Corporation records, citing the

additional costs associated with her access and the fact that she was no longer seeing patients.

27. Mazzei paid himself "K-1" distribution checks from the Corporation's bank account, but the checks were written only to himself.

28. Mazzei also wrote checks from corporate accounts to cash.

29. Mazzei stopped paying Mason a salary in September of 2021.

30. In October 2021, Mazzei filed for divorce in state court. Divorce proceedings are ongoing.

31. In October 2021, Mazzei changed the locks on the practice's building upon the advice of his divorce lawyer and without Mason's consent.

32. On December 28, 2021, Mason, by counsel, submitted a letter to Mazzei's divorce lawyer and to the Corporation's lawyer asserting her concerns regarding the checks written to cash, the allocation of salary that Mason never received, the use of corporate accounts and credit cards for personal use, and the transfer of money from Mason's personal health savings accounts to a corporate account. Mason demanded a full accounting and that Mazzei cease and desisting from processing payroll, making distributions, and taking other similar acts without Mason's consent.

33. Mason never attempted to call a corporate meeting to address her ongoing concerns or to make any changes to Mazzei's authority at the Corporation, despite Mason's status as majority shareholder.

34. Mason briefly returned in April 2022 to collect her personal belongings.

35. On January 1, 2023, Mazzei began practicing podiatry in a new corporation he formed, Abingdon Podiatry, PC (Abingdon Podiatry) out of the building the Corporation leases from Footsteps, LLC. Abingdon Podiatry uses the same web address, phone number, and has the same patients as the Corporation. It also uses the equipment the Corporation originally leased from Mazzei.

36. The Corporation has not been dissolved and still has active bank accounts used to collect past due patient fees and pay bills. The Corporation still pays for Mason's vehicle and her and the couple's children's health insurance. Otherwise, the Corporation's medical practice is now closed.

### III. ANALYSIS.

#### A. *Shareholder Status.*

The defendants contend that Mason is not a shareholder and therefore she does not have standing to bring her derivative claims, Counts One and Two. After careful consideration of the evidence, I find that Mason has established that she is and was

at all relevant times a shareholder in the Corporation and therefore does have standing to sue derivatively.

Derivative suits must be brought by shareholders.  Fed. R. Civ. P. 23.1(b) (detailing the pleading requirements for derivative actions brought in federal court); Va. Code Ann. § 13.1-672.1 (listing the conditions to have standing to bring suit under the Virginia Stock Corporation Act).   The Code of Virginia[2] defines a shareholder, in relevant part, as "the person in whose name shares are registered in the records of the corporation."  Va. Code Ann. § 13.1-603.  "Possession of stock certificates and registration of the certificates in the records of a corporation are prima facie evidence of shareholder status," but such possession and registration is not dispositive.  *Barber v. VistaRMS*, Inc., 634 S.E.2d 706, 711–12 (Va. 2006); *Finn v. Brown*, 142 U.S. 56, 67 (1891) ("[A person] is presumed to be the owner of the stock when his name appears upon the books . . . as such owner . . . .").  Courts applying Virginia law have also looked to payment for the shares and the corporation's payment of dividends in determining shareholder status.  *Rountree Motors, Inc. v. Commonwealth Dealers Life Ins. Co.*, No. 3:13cv47 (DJN), 2013 WL 4102161, at *4 (E.D. Va. Aug. 13, 2013) (citing *Turnbull v. Payson*, 95 U.S. 418, 420–21 (1877)).  Acknowledgements of shareholder status are also instructive.

---

[2]  Virginia substantive law supplies the rule of decision in this diversity action. *Smith ex rel. Birn v. Sperling*, 354 U.S. 91, 95 (1957).

*Vanderwerken v. Glenn*, 6 S.E. 806, 808–09 (Va. 1888) ("As to the third objection, namely, that there is no proof of the defendant being a stockholder, we regard it as utterly untenable; for the record not only discloses the fact that he agreed to subscribe for 50 shares of the stock, but that he was one of the subscribers who executed a power of attorney by which they acknowledged themselves stockholders of the company . . . .").

Authority from other jurisdictions provides guidance as to the determination of shareholder status in the absence of certificates. A general rule can be gleaned from these authorities: corporate ownership is determined based on a totality of the circumstances, and irregularities and informalities do not render ownership void. 18A Am. Jur. 2d *Corporations* §§ 607, 612 (2020). The fact that an individual was listed as a shareholder in the articles of incorporation, was treated as a shareholder at meetings, and there was evidence of consideration for the shares of stock has been found to demonstrate ownership. *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 423 A.2d 370, 375 (Pa. Super. Ct. 1980). A non-rescinded resolution granting an individual shares and the recognition of the individual as a shareholder at annual meetings have also been determinative facts. *Kaiser v. Moulton*, 631 S.W.2d 44, 48 (Mo. Ct. App. 1981). References to an individual as a shareholder in corporate minutes and the fact that the individual was a director, in conjunction with the fact that the corporate bylaws required directors to be shareholders, have been factors

found to be sufficient to at least establish a presumption of ownership. *Fourdyce v. Bay View Fish Co.,* 443 N.E.2d 790, 793 (Ill. App. Ct. 1982). The conduct of the parties, the payment of dividends, and the testimony of those familiar with the corporation can also be informative. *Weitz v. Weitz*, 477 P.3d 987, 991–92 (Idaho 2020). "[A] myriad of corporate and personal tax returns, financial statements, bank applications, correspondence between the parties and other documents created a preponderance of credible evidence evincing plaintiff's interest as a stockholder." *Blank ex rel. Blank v. Blank*, 256 A.D.2d 688, 694 (N.Y. App. Div. 1998).

Moreover, the treatment of an individual as a shareholder on corporate tax returns has also been found to demonstrate shareholder status. *Thomas v. Thomas*, 179 A.D.3d 98, 102–03 (N.Y. App. Div. 2019); *Guidry v. Savoie*, 194 So. 3d 1184, 1191 (La. Ct. App. 2016). One court has opined that when a corporation treats an individual as a shareholder on Schedule K-1s, "[the corporation] cannot take a position in this proceeding contrary to the position taken on its tax returns.*" Matter of Coven v. Neptune Equities, Inc.*, 198 A.D.3d 643, 646 (N.Y. App. Div. 2021).

With this backdrop in mind, Mason has established by a preponderance of the evidence that she is and was at all relevant times a shareholder of the Corporation. It is true that no stock certificate was ever issued and she has not presented evidence showing she actually paid the monies she promised to pay for her shares. However, she participated in corporate meetings, signed meeting minutes as a shareholder, was

and still is treated as a shareholder on tax returns, up until the fallout with Mazzei, received distributions from the Corporation, and contributed both labor and furnishings to the Corporation. The Corporation never rescinded the resolution in the minutes of the First Directors' Meeting authorizing the officers to issue certificates for the shares of stock. Pl.'s Ex. 4 at 4, ECF No. 57-4. Furthermore, Mason is a director of the Corporation and the bylaws required that the directors be stockholders. Defs.' Ex. 104 at 2, ECF No. 57-12. Testimony from the corporate attorney and the corporate accountant demonstrate that Mason and Mazzei held themselves out as shareholders, and testimony from Mazzei and Mason indicate that they considered themselves to be shareholders and that the failure to issue certificates was inadvertent.

As for Mason's failure to pay the amount she promised in her stock subscription, this may constitute a debt Mason owes, *Vanderwerken*, 6 S.E. at 808 ("As stockholders who have not paid in the whole amount of the stock subscribed and owned by them, they stand in the relation of debtors to the corporation for the several amounts due by them . . . ."), but this fact does not invalidate Mason's ownership in light of the fact that the Corporation and Mazzei have acted as if the parties' consideration for their subscribed shares was sufficient and effectuated for over twenty-five years. *See Reed & McCormick v. Gold*, 45 S.E. 868, 871 (Va. 1903) ("Whatever may be said of a case where no fact is present as the foundation of an

inference that title has passed, except the bare fact of a subscription, it is entirely reasonable that where, in addition, the corporation has explicitly recognized the alleged stockholder as such, and the latter has acted in that capacity, such facts should be deemed sufficient to justify a conclusion of ownership, and make the subscriber a stockholder.") (internal quotation marks and citation omitted).  To find otherwise would give credence to a position completely contrary to the one the Corporation and Mazzei have acted under for decades.

### B.  Breach of Fiduciary Duty (Count One).

Directors and officers of Virginia corporations owe fiduciary duties to their corporation and to the corporation's shareholders.  *Byelick v. Vivadelli*, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999); *A.I.M. Percolating Corp. v. Ferrodine Chem. Corp.*, 124 S.E. 442, 445 (Va. 1924).  The law considers directors and officers to have a "quasi trust" relation with the corporation and the stockholders as a class, meaning that they "must act in the utmost good faith, and this good faith forbids placing himself in a position where his individual interest clashes with his duty to his corporation." *Rowland v. Kable*, 6 S.E.2d 633, 642–43 (Va. 1940).  Such persons must act with loyalty to the corporation. *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 743 (Va. 2006).  This means a corporate officer or director may not "divert a corporate business opportunity for personal gain because the opportunity is considered the property of the corporation." *Id.* at 742–43.  Although officers and

directors may not breach their duty simply by engaging in another business, *Sternheimer v. Sternheimer*, 155 S.E.2d 41, 47 (Va. 1967), they may not compete with the corporation. *Williams v. Dominion Tech. Partners, L.L.C.*, 576 S.E. 2d 752, 757 (Va. 2003); *Sternheimer*, 155 S.E.2d at 97 (noting that a director and officer must act in good faith and "not interfere with the business enjoyed by the corporation") (internal quotation marks and citation omitted). This is the case even if the director or officer financed the corporation or otherwise contributed to it. *Upton v. S. Produce Co.*, 133 S.E. 576, 580 (Va. 1926). "[U]surpation of corporate business opportunity is generally considered a breach of fiduciary duty." *Feddeman & Co., C.P.A., P.C., v. Langan Assocs., P.C.*, 530 S.E.2d 668, 675 n.1 (Va. 2000).

At trial, Mazzei admitted that he has recently opened another podiatry business, Abingdon Podiatry. The new business is operating in the same location as the Corporation, in the building the Corporation rents from another of Mason and Mazzei's companies and is using the same equipment and furnishings. The evidence also indicates that the new business is utilizing the same web address, phone number, and has the same patients. This is a textbook example of usurpation of the Corporation's business opportunity for personal gain. Mazzei can now individually benefit from the Corporation's established business through the operation of another entity, one he controls entirely, all to the detriment of the Corporation and the

shareholders of the Corporation.  By establishing Abingdon Podiatry, Mazzei has breached his fiduciary duties as officer and director of the Corporation.

Mason also argues that Mazzei has breached his fiduciary duties by taking unequal distributions and by wrongfully denying her access to the practice's records and building.  The evidence presented at trial establishes that Mazzei has written checks from the corporate bank account which have been categorized as K-1 distributions, and Mazzei testified that he has not paid any corporate distributions to Mason since September 2021, although he did pay her court-ordered spousal support.  He also testified that he had changed the locks on the building and that he removed her access to patient records around October 2021.

However, this portion of the claim is individual in nature.  Under Virginia law, the corporate directors and officers owe fiduciary duties to the corporation's shareholders as a class, not individually.  *See Remora Invs., L.L.C. v. Orr*, 673 S.E.2d 845, 845 (Va. 2009) (discussing Virginia corporate law as applied to a limited liability company).  Thus, even if a shareholder sustains an injury, "breach of fiduciary duty by a director can be redressed only through a derivative action."  *DCG & T ex rel. Battaglia/IRA v. Knight*, 68 F. Supp. 3d 579, 586 (E.D. Va. 2014).  Taking unequal distributions and locking Mason out of the practice amounts to individual harm, and there is no evidence that the distributions, or the fact that Mason has not had access to the practice since she departed for Maryland in August 2021, harmed

the Corporation.  *See O'Brien v. Midgett*, No.: CL15-5459, 2017 WL 11457203, at *11 (Va. Cir. Ct. July 26, 2017).[3]  Mason did not present evidence to suggest that the Corporation would have kept any portion of the disproportionate distribution made solely to Mazzei.  The corporation would have been in the same position had the checks been written jointly as they had been prior to September 2021.  Thus, any claimed injury to the Corporation is purely speculative and cannot serve as a basis for Mason's breach of fiduciary duties claim.

Finally, Mason argues that Mazzei has breached his fiduciary duty by mismanaging corporate funds.  The evidence indicates that business and personal funds have been commingled.  Corporate credit cards were used for personal expenses, and such personal expenses were categorized as shareholder advances or loans for accounting purposes.  For example, the Corporation's 2020 General Ledger shows thousands of dollars' worth of jewelry purchases from Blue Nile and Tiffany & Co.  Pl.'s Ex. 9 at 42–43, ECF No. 57-7.

Normally, such conduct may constitute a breach of Mazzei's duty because such transactions were not entered into with the Corporation's interests in mind.  *Cf.*

---

[3] Directors and officers do have a duty to conserve the corporation's assets to allow for the payment of corporate debts.  *Marshall v. Fredericksburg Lumber Co.*, 173 S.E. 553, 558 (Va. 1934); Va. Code Ann. §§ 13.1-653(C), 13.1-692.  But Mason did not offer evidence that Mazzei improperly issued distributions to the detriment of the corporation's creditors, but rather argued that she too was entitled to a share of the corporate profits distributed.

*O'Hazza v. Executive Credit Corp.*, 431 S.E.2d 318, 323 (Va. 1993). This is especially true considering the fact that Mazzei has not demonstrated how such transactions constitute valid business expenses. *See Mardel Sec., Inc. v. Alexandria Gazette Corp.*, 320 F.2d 890, 894 (4th Cir. 1963) (involving the commingling of two business operations and indicating that the corporate director and officer had the duty to prove the fairness of his transaction to the business at issue); *Biton v. Kreinis*, No.: CL19-7991, 2020 WL 8837633, at *12 (Va. Cir. July 10, 2020) (noting that the court had earlier held that "the burden had shifted to [the defendant] to prove what, if any, portion of the commingled funds constituted valid business expenses").

However, in the context of this two-person, family-owned business, the use of corporate funds in this way was standard practice, a practice for which Mason benefited from until September 2021, and to a limited extent to this day with respect to her car payment and health insurance. As to any failure on Mason's part to appreciate the nature of the state of the Corporation's finances, the evidence suggests such failure was due to her decision to not be active in the management of the Corporation until August of 2021. There is no evidence that Mazzei misled Mason as to how corporate funds were being used. She essentially turned a blind eye to her

position in the Corporation and benefited from the informal way the Corporation was managed by her husband.[4]

Furthermore, the evidence of such personal expenditures stems from the corporation's 2020 accounting and tax documents. Pl.'s Ex. 9, ECF No. 57-7. Yet Mason makes it clear that her claims regard Mazzei's conduct after the couple's falling out in July and again in August 2021. Am. Compl. ¶ 25, ECF No. 11. Mason has not shown by a preponderance of the evidence what, if any, corporate and personal assets were commingled post-July 2021, other than the car payments and health insurance for which she continues to derive benefit. There is simply not sufficient evidence regarding the use of corporate credit cards or the payment of personal credit card debt from Corporation accounts in 2021 and 2022 that benefitted only Mazzei.[5]

Mason also argues that Mazzei has mismanaged the corporate assets by writing checks to cash which went to Mazzei personally and by overdrawing corporate accounts. But she has also failed to meet her evidentiary burden as to these allegations. There are only two checks written to cash in evidence, both from September 2021, amounting to $ 1,100. Pl.'s Ex. 7 at 1, ECF No. 57-5. Mason has

---

[4] That is not to say a corporate creditor may not have a claim to pierce the corporate veil should the corporation be unable to pay its debts.

[5] The fact that Mazzei testified that the Corporation's bookkeeping practices remained the same in 2022 is not determinative.

submitted no documentary evidence showing where these checks written to cash actually went or introduced circumstantial evidence related to the checks. Rather the testimony indicates that it was regular practice for the checks to be written to cash to move money between the Corporation's multiple accounts. There is no record of all the Corporation's accounts, which could have been subpoenaed and offered into evidence, to allow for anything beyond speculation that the checks written to cash left the practice. Moreover, there is no evidence corroborating the claim the Corporation accounts were overdrawn. To the contrary, the Corporation's long-time account testified that she could not recall the corporate accounts being overdrawn.

In sum, I find that Mazzei has breached his fiduciary duties to the Corporation by opening a competing business. However, Mazzei's payment of unequal distributions and restriction of Mason's access to the business did not breach his duty to or injure the Corporation or the shareholders as a class. Furthermore, Mason has not met her evidentiary burden as to her factual allegations regarding Mazzei's post July 2021 commingling of assets and alleged mismanagement of corporate funds.

### C. Conversion (Count 2).

Mason also contends that Mazzei's conduct amounts to conversion. Common law conversion occurs when a person wrongfully exercises or assumes authority over another's goods. *Simmons v. Miller*, 544 S.E.2d 666, 679 (Va. 2001).

Thus, when a person deprives a corporation of the use and value of the corporation's property, he is liable to the corporation for conversion. *Id.*; *Crump v. Bronson*, 191 S.E. 663, 665, 667 (Va. 1937) (holding a director liable for improperly converting corporate funds).

As discussed above, the evidence shows that Mazzei has converted corporate property though the establishment of Abingdon Podiatry. The new business operates using the leased property of the Corporation,[6] its furnishings, the Corporation's website and phone number, and the Corporation's patient records. Accordingly, I find that Mazzei has improperly assumed authority over the Corporation's corporate property through his operation of Abingdon Podiatry.[7]

Mason also argues that Mazzei has converted her share of the cash distributions, and she testified that Mazzei took over $6,000 out of her personal health savings account for deposit in the Corporation's accounts without her consent. Mazzei admits that he has paid himself distributions without paying Mason her share. But there is no evidence corroborating Mason's testimony regarding the health savings account funds. Thus, I do not find that Mason has established this

---

[6] Although the Corporation did not have title to the building or the equipment, I find that the Corporation did have a possessory interest in that property.

[7] I note that there is no evidence that corporate funds have been converted for use by Abingdon Podiatry.

fact by a preponderance of the evidence.  In any event, Mason's conversion claim is a derivative claim brought on behalf of the Corporation.  Although she alleges in the Amended Complaint that Mazzei wrongfully deprived her of her interest in the practice, injuries that are personal in nature, counsel conceded at oral argument on the cross motions for summary judgment that this claim is a derivative one.  Mason's personal entitlement to distributed corporate profits and her personal heath savings account are not corporate interests, so her derivative conversion claim with respect to these facts fails.[8]

### D. Tortious Interference with Business Expectancy (Count Four).

Mason avers in her personal capacity that Mazzei has interfered with Mason's business relationships and economic advantage in the Corporation.  In Virginia, tortious interference with a business expectancy is a tort consisting of the following elements: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Com. Bus. Sys., Inc. v. Halifax Corp.*,

---

[8]  Mason also alleges in her Amended Complaint, and testified at trial, that Mazzei failed to pay her wages that were attributed to her on her W-2 from August 2021.  Again, Mason has provided no corroborating evidence as to this claim.  Moreover, it too is an individual injury rather than a derivative one.

484 S.E.2d 892, 896 (Va. 1997) (citation omitted) (noting that elements (1) and (4) must meet an objective test and that mere "[p]roof of a 'possibility' that such benefit will accrue is insufficient") (Id. at 897).

Except when Mason took extended time away from the practice because of the COVID-19 pandemic, she typically saw patients at the clinic three days a week. Moreover, it cannot be denied that Mazzei knew of these expectancies as Mason's husband, co-owner, co-director, and co-officer.

However, the evidence does not establish with reasonable certainty that Mason would have continued her relationships with or realized the expectancies with regard to these patients.  Testimony from both Mason and Mazzei confirmed that Mason left the practice in August 2021 and moved to Maryland, at least two months before Mazzei changed the locks to the clinic and locked her out of the electronic records.  There is no evidence that Mason sought to continue to treat patients in Abingdon, other than completing charts on patients she had already seen.  Mazzei testified that Mason did not attempt to return to building until she returned to Abingdon in April or May of 2022 to collect her personal belongings.  Accordingly, I do not find that the evidence sufficiently establishes that Mason would have continued seeing patients or realized her business expectancy as a corporate practitioner and earned wages for her labor.

Mason also asserts in her Amended Complaint that she was entitled to share the profits of the Corporation, that Mazzei's conduct prevented her from realizing those profits, and that such wrongful conduct interfered with her economic advantage in the practice. Mason's move to Maryland, though indicative of an abandonment of her work with patients, does not indicate she intended to abandon her ownership interest in the Corporation. Moreover, Mason's share of the Corporation's undeclared profits does constitute an expectancy. *O'Brien v. Socony Mobil Oil Co.*, 152 S.E.2d 278, 285 (Va. 1967).

It should be noted that neither Mason nor Mazzei have an absolute right to cash distributions. Va. Code Ann. § 13.1-653 (indicating that the board of directors may make distributions to shareholders, subject to certain restrictions, such as when the corporation would not be able to pay its debts); Defs.' Ex. 104 art. V, ECF No. 57-12 (indicating that dividends would only be declared as the directors deemed prudent and that none should be declared if it would diminish the capital of the company); *cf. O'Brien*, 152, S.E.2d at 285 (noting that undeclared dividends are not a vested property right and that "[stockholder] was entitled to receive dividends on her shares . . . only out of the surplus or net earnings of the corporation and only when and as declared by the board of directors of the corporation") (internal quotation marks and citation omitted). The right to realize the profits was a matter

of discretion of the Board of Directors, subject to statutory restrictions and those in the bylaws.

However, once a cash distribution was declared,[9] Mason's expectancy became one that she would have realized but for Mazzei's refusal to pay Mason. *Cf. Id.* at 285 (suggesting that once a dividend is legally declared, it ripens into a debt). The evidence clearly shows that Mazzei declared distributions through the issuance of checks, but that he only wrote checks to himself starting in September 2021. Although he testified that he had loaned the Corporation money and was only paying himself back, certain checks he wrote to himself were labeled as distributions, not loan repayments.[10]

I note that the facts in this case differ from those present in many tortious interferences claims in that the expectancy is not with the typical third party. *See, e.g., Glass v. Glass*, 321 S.E.2d 69, 76–77 (Va. 1984). However, the unusual nature of the facts underlying this Count does not mean the cause of action lacks viability. The corporation is a separate entity, and Mason held a business expectancy, or

---

[9] Mazzei, acting alone as director, decided to issue distributions, which contravenes the procedure outlined in the Corporation's bylaws giving the authority to declare distributions to the board of directors. However, Mason and Mazzei did not follow this procedure and the evidence indicates it was common practice for Mazzei to make the Corporation's financial and management decisions.

[10] There are three checks written to Mazzei that do not include a notation describing their purpose, but they are similar to the distribution checks in their amounts. Pl.'s Ex. 7 at 7–8, ECF No. 57-5.

arguably even more than an expectancy, in the profits of that separate entity upon the declaration of corporate distributions.  Mazzei acted intentionally and wrongfully by keeping the entirety of the declared distribution for himself, contravening Mason's shareholder status and the parties' longstanding practice of sharing the distribution check payments.[11]  But for Mazzei's taking all of the declared distribution checks for himself, Mason would have received the benefit of a portion of the profits.  Thus, I find that Mason has established by a preponderance of the evidence that Mazzei wrongfully interfered with Mason's business expectancy with the Corporation and is damaged to the extent discussed below.

### E. Damages & Equitable Remedies.

Having established Mazzei's liability as to Counts One, Two, and Four, I turn to the evidence of damages and the other remedies Mason seeks.

To start, I note that the Amended Complaint indicates that Mason seeks monetary damages from Mazzei's conversion, and she requests an accounting so that she may be paid the amounts owed.  However, because Mason brings Count Two derivatively, damages attributable to that Count go to the corporation, not to Mason, which protects both her as a shareholder as well as the Corporation's creditors. *Simmons*, 544 S.E.2d at 575–76.

---

[11]  The evidence shows that prior to the parties' separation, distribution checks were written from the Corporation to Mason and Mazzei jointly.

As for monetary damages to the corporation as a result of Mazzei breach of fiduciary duties and conversion, I find that Mason has failed to establish the extent to which the Corporation has been damaged.  Mason has only introduced copies of checks from what appears to be one Corporation bank account, through July 2022. There are no other records in evidence for the accounts which Mason testified exist and were commonly used to move money within the practice.  Without evidence showing the transactions in the Corporation's accounts during the relevant time period, I cannot ascertain monetary damages beyond speculation or that the two checks written to cash in evidence left the Corporation.

Moreover, evidence of money transferred to Mazzei, or to Abingdon Podiatry, that was improperly derived from the Corporation, is absent.  There is no evidence about the profits that may have been attained by the new business and no evidence regarding its prospective profits.  There is also no evidence as to the value of the equipment or any of the personal property now used by Abingdon Podiatry.  As such, damages are not reasonably ascertainable.

As for Count Four, Mason has established by a preponderance of the evidence that Mazzei paid himself distribution checks totaling $30,250.  Pl.'s Ex. 7, ECF No. 57-5 (including nineteen checks written to Brian Mazzei from September 2021 through July 2022, excluding those written for payroll).  Thus, I find that Mason is entitled to damages amounting to 50.2% of those distribution payments, or

$15,185.50, representing Mason's portion of the profits in the Corporation had Mazzei not wrongfully interfered with her ownership interest.[12]

### i. Accounting.

Mason also seeks an accounting to help ascertain damages. The legal term "accounting" encompasses equitable remedies taking various forms. Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies,* 416 (3d ed. 2018). One type is to deal with accounts that are too complex for the factfinder's decision. *Id.* In this type of accounting, "[w]hile the court determines the amount due and grants an order for the payment of money, . . . the real remedy is a non-jury trial." Joel Eichengrun, *Remedying the Remedy of Accounting*, 60 Ind. L.J. 463, 470 (1985). It is appropriate in the absence of an adequate remedy at law. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). "The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records." *Id.* at 479. It has become obsolete in federal court because of Federal Rule

---

[12] In her Amended Complaint, Mason requests punitive damages as part of her tortious interference claim. However, I do not find such damages to be appropriate under the facts established by the evidence. In my discretion, I will provide for prejudgment interest on the award of compensatory damages at the rate of six percent per annum from December 28, 2021, the date that Mason first demanded that Mazzei stop making distributions without her consent. *See Moncrieffe v. Deno*, 882 S.E.2d 524, 533–34 (Va. Ct. App. 2023) (approving six percent prejudgment interest beginning at a "rational start-date").

of Civil Procedure 53(b)'s allowance for the appointment of masters. *Id.* at 478–79; Eichengrun, *supra*, at 473, 476.

The second type of accounting is essentially a discovery order. This type of accounting "probably has little or no use today." Dobbs & Roberts, *supra*, at 416–17. "Occasionally a party will seek an 'accounting' on the ground that he is unable to determine an amount due where the opponent has the relevant books and records . . . [C]ourts have usually been quick to point out that discovery is available and deny an accounting for that purpose only." Eichengrun, *supra*, at 476.

The third type of remedy called an accounting is used to capture profits and force a fiduciary to disgorge improper gains. Dobbs & Roberts, supra, at 417. Once a plaintiff "makes a prima facie case by showing a breach of fiduciary duty plus gross receipts resulting to the fiduciary" the burden shifts to the fiduciary defendant to prove appropriate deductions to determine net profit. *Id.* In Virginia, an accounting is available upon order "providing for an accounting of funds among those with a partnership or other fiduciary relation." *McClung v. Smith*, 870 F. Supp. 1384, 1400 (E.D. Va. 1994) (internal quotation marks and citation omitted), *remanded in part on other grounds*, Nos. 95-1106, 95-1187, 89 F. 3d 829 (4th Cir. 1996) (unpublished). It "has long been available to require trustees or agents to account for their actions in dealing with the funds of beneficiaries or principals." *Id.* This type of accounting has been found to be an appropriate remedy even in the

absence of fraud and mismanagement, and when a fiduciary has secured benefits that have not been shared with others who were entitled to a pro rata share of the benefits. *S. Pac. Co. v. Bogert*, 250 U.S. 483, 491 (1919).

Here, Mason seeks an accounting because she claims the amount of money misappropriated by Mazzei's operation of the Corporation "is unknown and cannot be ascertained." Am. Compl. ¶ 83, ECF No. 11. I find that this is an improper attempt to use an accounting as a discovery tool. Mason had an opportunity to conduct discovery and could have subpoenaed the relevant financial records. She also could have sought expert assistance to go through the Corporation's financial records and accounting practices. *Cf. DPR Inc. of Va. v. Dinsmore*, Nos. CL-2009-12552, 2009-13137, CL-2009-13138, CL-2010-988, 2011 WL 7493447, at *4 (Va. Cir. Ct. Apr. 6, 2011) (finding that an accounting was unwarranted because the corporate books and transactions were analyzed by experts at a three-day trial, which was "the functional equivalent of an accounting").[13] Upon learning about Abingdon Podiatry, she could have requested leave from the court to conduct additional discovery related to the funding of the new entity.

As discussed previously, Mazzei does stand in a fiduciary relationship to the Corporation, which may provide grounds for the third type of accounting discussed.

---

[13] The Corporation's former accountant testified at trial, but that testimony focused on the accounting practices prior to the couple's falling out in the summer of 2021.

However, Mason has not sufficiently established that corporate funds resulted in improper gains going to Mazzei or to Abingdon Podiatry, other than the disproportionate distribution checks discussed, evidence that would shift the burden to Mazzei to prove the appropriate deductions.  He certainly breached his duty to the Corporation by opening a competing practice, but absent pure speculation, there is no evidence that corporate funds have been used in the new practice.  Again, Mason has not sufficiently proved that the only two checks written to cash that are in evidence went to Mazzei or to his new company, or even left the Corporation at all, and Mazzei testified that he started the new company with his own funds.  *See Giannotti v. Hamway*, 387 S.E.2d 725, 731 (Va. 1990) (noting that an officer or director may be compelled to account to his corporation for transactions in which he had acquired a personal advantage or from which he has profited).  Nor is there evidence about personal credit card charges that purportedly benefitted only Mazzei and were paid from corporate funds after August 2021.  As discussed above, Mason seeks money damages based on transactions that can be determined from examining the financial records of the Corporation, Mazzei, and Abingdon Podiatry, including the Corporation's credit card statements.  *In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 2169021, at *12 (N.D. Cal. May 23, 2008) (stating

that a claim for an accounting fails when it appears none is necessary or there is an adequate remedy at law).[14]

However, I do find that Mason has sufficiently established that Mazzei has profited from his improper conversion of other corporate property, namely its leased equipment, leased building, website, phone number, and patient records. The Corporation's accountant testified that Abingdon Podiatry has been active since January 1, 2023, and that at least one payroll has been processed. This certainly shows that Mazzei has seen patients through the new practice and has obtained some monetary benefit from those patient visits. Thus, I find that an accounting of Abingdon Podiatry is proper solely to disgorge Mazzei from improper gains he, through this new entity, has obtained because of its use of the Corporation's personal and leased property.

### ii. Constructive Trust.

Mason also seeks a constructive trust. A constructive trust is a remedy that arises by operation of law to prevent what otherwise would result in a fraud, such as when a defendant wrongfully diverts assets from one entity into another for the

---

[14]    In her closing argument, Mason's counsel stated that she would like an independent accountant to properly account for distributions from August 2021 through December 2022 for tax purposes so that Mason's tax liability is in line with what she actually received. However, as the Corporation's accountant testified, Mason's tax liability is not dependent on what she received, but instead is based on her ownership percentage in the Corporation.

defendant's personal benefit. *Tauber v. Commonwealth ex rel. Kilgore*, 562 S.E.2d 118, 129 (Va. 2002). It may arise from breach of a fiduciary duty. *Greenspan v. Osheroff*, 351 S.E.2d 28, 36–37 (Va. 1986). The plaintiff must support the need for a constructive trust by clear, definite, and convincing evidence. *Id.* at 37. Moreover, the plaintiff bears the burden of tracing the assets which are to be made the subject of the trust. *Tauber*, 562 S.E.2d at 129.

As discussed, the evidence is that Mazzei converted certain corporate property for use by Abingdon Podiatry. Mazzei himself testified as to such facts. Accordingly, I find that Mason has established by clear, definite, and convincing evidence that the Corporation's assets currently held by Abingdon Podiatry can be traced to the Corporation and should be held in trust for the benefit of the Corporation until it is dissolved or otherwise properly sold by Mason and Mazzei.

In contrast, Mason has not provided clear, direct, and convincing evidence that distinctly traces any corporate funds, namely the two checks written to cash and the funds covering personal credit card charges from August 2021 to December 2022, to Mazzei or Abingdon Podiatry. Thus, the requirements for a constructive trust over Mazzei's or Abingdon Podiatry's bank accounts have not been met.

Finally, to the extent Mason seeks a trust over the funds that remain in the Corporation's bank accounts in order to protect such funds, I find such a remedy to be inappropriate. Money that remains in Corporation accounts does not constitute

property that has been acquired by another or diverted to another contrary to the principles of equity. *Faulknier v. Shafer*, 563 S.E.2d 755, 758 (Va. 2002). I do not find it necessary to impose a constructive trust on property still possessed by its rightful owner, the Corporation. However, in light of the Corporation's current status and in the interests of justice, to the extent Mazzei makes further withdrawals of corporate funds or otherwise disposes of corporate property still held by the Corporation while the Corporation exists and Mason remains co-owner, Mazzei shall be required to account to Mason for any such transactions, pay Mason her share of any legal distributions declared, and return any such funds or property to the Corporation to the extent that any transaction is improper under the Corporation's bylaws or Virginia law.

## IV. CONCLUSIONS OF LAW.

Pursuant to Rule 52(a), I make the following conclusions of law.

1.  This court has subject-matter jurisdiction and personal jurisdiction over the parties.

2.  The plaintiff has standing to sue derivatively.

3.  The plaintiff has proven by a preponderance of the evidence that Defendant Mazzei has breached his fiduciary duties to the Corporation and to the shareholders as a class by opening a competing podiatry practice.

4. The plaintiff has proved by a preponderance of the evidence that Mazzei has converted Corporation assets.

5. The plaintiff has not proved by a preponderance of the evidence that Mazzei converted her personal funds nor does that claim fall within the scope of her derivative claim, and therefore she is not entitled to relief on this claim.

6. The plaintiff has proved by a preponderance of the evidence that Mazzei interfered with her business expectancy in the Corporation and is entitled to damages in the principal amount of $15,185.50, representing 50.2% of the distribution checks improperly paid only to Mazzei.

7. The plaintiff has proved by a preponderance of the evidence that she is entitled to an accounting of the profits obtained by Abingdon Podiatry through Mazzei's improper conversion of the Corporation's personal, leased, and intellectual property.

8. The plaintiff has proved by clear, definite, and convincing evidence that a constructive trust should be imposed over the Corporation's property currently being used by Mazzei through his operation of Abingdon Podiatry until the Corporation is dissolved or otherwise properly disposed of.

## V.  CONCLUSION.

For the reasons stated, the plaintiff's requested relief will be granted in part.

A separate final judgment will be entered pursuant to Federal Rule of Civil

Procedure 58.


DATED:   March 17, 2023

/s/  JAMES P. JONES
Senior United States District Judge